UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DARNELL MCDANIELS,                           Case No. 18-CV-2631-JRT-KMM

           Petitioner,

v.                                                                       **REPORT AND RECOMMENDATION**

HALVORSON,

           Respondent.

---

This matter is before the Court on Petitioner Darnell McDaniels's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (ECF No. 1.) For the reasons stated below, the Court recommends that Mr. McDaniels's Petition be DENIED.

## I. Factual and Procedural Background

Mr. McDaniels is serving a sentence for third degree murder pursuant to Minn. Stat. § 609.195(b). He was convicted of providing heroin that led to the death of a victim identified as "D.K." The facts surrounding D.K.'s death are described in detail in the Minnesota Appellate Court opinion and are briefly restated here.

D.K. lived at a group residential home for adult men with chemical dependency or mental health issues, and despite the house's rules against consuming alcohol or drugs, he and his roommate, D.M., regularly drank alcohol together in their room. (Appeals Court Opinion, ECF No. 9 Ex. 6 at 2.) Though D.M. knew that D.K. was a recovering heroin addict, he had never seen D.K. use any controlled substances other than alcohol or prescription drugs. (*Id.*) On January 22, 2015, while D.M. was smoking a cigarette outside the house, a man, later identified as Mr. McDaniels, pulled up in a van and asked for D.K. (*Id.*) D.M. directed Mr. McDaniels inside. After finishing his cigarette and entering the house, D.K. introduced D.M. to Mr. McDaniels as his friend "Big." (*Id.*) D.M. witnessed D.K. and Mr. McDaniels

1

conversing for a few minutes before using the restroom, leaving the others alone for less than a minute. (*Id.*) Approximately four minutes after arriving, Mr. McDaniels left the house. (*Id.* at 3.) D.M. observed D.K. begin to act strangely, becoming "really aggressive, really loud," "amped," and "crazy." (*Id.*) Concerned, D.M. asked D.K. if he was okay. D.M. later reported that D.K. replied that "he felt really good, that he had just met with his drug dealer in their room, and that he had done heroin." (*Id.*) D.K. left the room briefly, returned, and told D.M. that he was going to lie down. (*Id.*) D.M. was watching television at the time and believed D.K. had fallen asleep. However, after about 45 minutes, D.M. noticed that D.K. had not made any movements or sounds, and appeared blue in the face. (*Id.* at 3–4.) D.K. was unresponsive, and despite emergency medical intervention, D.K. was pronounced dead. (*Id.* at 4.)

Heroin, a spoon with a small piece of cotton, and a used hypodermic needle were recovered at the scene. (*Id.*) D.K. had a small pinprick on his finger, and a small amount of blood was observed in the needle. (*Id.*) Several unused hypodermic needles were also found in the room. (*Id.*) An autopsy was performed on D.K., whose laboratory results revealed the presence of heroin in his system, along with a blood alcohol concentration that was three times the legal limit. (*Id.*) The forensic pathologist concluded that D.K.'s death was accidental, caused by "acute heroin and ethanol intoxication." (*Id.*) Mr. McDaniels was later charged with and convicted of third-degree murder in connection with D.K.'s death. (*Id.* at 5.)

Mr. McDaniels challenged his conviction at the Minnesota Court of Appeals on four grounds: the sufficiency of the evidence regarding causation; the trial court's admission of D.K.'s statement to D.M. under the residual hearsay exception; the introduction of Mr. McDaniels's statement to a law enforcement officer about engaging in the sale of heroin; and the admission of law enforcement testimony about Mr. McDaniels's prior convictions for engaging in the sale of heroin. (*See generally* Appeals Court Opinion, ECF No. 9 Ex. 6.) The Appeals Court upheld his conviction, rejecting all four of the challenges Mr. McDaniels raised. He next petitioned the Minnesota Supreme Court for review on two grounds: the admission of D.K.'s statement under the residual hearsay exception and a new issue regarding pro se briefing that had arisen at the appeals stage. (ECF No. 9 Ex. 7.) The Minnesota

Supreme Court denied Mr. McDaniels's petition and judgment was entered on August 21, 2018. (ECF No. 9 Ex. 9.)

Mr. McDaniels now petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254.[1] He challenges his incarceration on the same four grounds he raised to the Court of Appeals.

## II.   Analysis

The standard set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) for success under § 2254 is "intentionally difficult to meet." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (citations omitted). Under AEDPA, relief is appropriate only when the petitioner establishes that "he is in custody in violation of the Constitution or laws or treats of the United States." 28 U.S.C. § 2254(a). The Court may only grant the petition if the adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Courts reviewing state court decisions are required to presume that state courts know and follow applicable federal law and must show them "due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 135 S.Ct. at 1376. Thus, federal habeas review of state court decisions "exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86 at 102–103 (2011)). Against this deferential backdrop, it is clear that Mr. McDaniels's habeas petition must fail.

---

[1] It was discovered more than a month after the habeas petition was received by the government's counsel that several pages were missing from the petition. Unfortunately, by that time, the original petition had been destroyed. However, the same pages missing from the government's copy are missing from the Court's electronic copy of the petition. It is presumed that Mr. McDaniels omitted those pages when he prepared his documents for filing, particularly since Mr. McDaniels has not contacted the Court to say otherwise.

### A.    Exhaustion: Issues One, Three, and Four

Under 28 U.S.C. § 2254(b)(1)(A), an application for writ of habeas corpus by an individual in custody due to a state court judgment may only be granted if the applicant has "exhausted the remedies available in the courts of the State." The exhaustion rule provides state courts "a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Accordingly, the Supreme Court has determined that state prisoners must "invok[e] one complete round of the State's established appellate review process." *Id.* Petitioners in states such as Minnesota that have a two-tier appellate process must challenge their convictions at both levels, even where the top state court operates a discretionary review system. *Id.* at 846–48. Where a petitioner has failed to fully exhaust a claim in state court, and the time for filing any challenge in state court has passed, that federal habeas claim is procedurally defaulted. *Id.* at 848

Here, three of Mr. McDaniels's habeas claims are procedurally defaulted. The first, third, and fourth issues were only appealed to the Minnesota Court of Appeals. More than a year has passed since the Minnesota Court of Appeals filed its decision, and the time for filing a petition for review on those issues has long since passed. Minn. R. Civ. Appellate Pro. 116.01. Therefore, Mr. McDaniels is now barred from bringing these claims to the Minnesota Supreme Court. Because he did not exhaust the issues raised in his first, third, and fourth habeas claims, and because he now cannot do so, those claims are procedurally defaulted. *O'Sullivan*, 526 U.S. at 848. Accordingly, the Court cannot grant a writ of habeas corpus on these claims, and the Court recommends their dismissal. *See* 28 U.S.C. § 2254 (b)(1)(A).

### B.    Hearsay Ruling: Issue Two

Mr. McDaniels's claim regarding the admission of D.K.'s statement to D.M. at his trial was properly exhausted before it was raised to this Court, so it has not been defaulted. However, this claim fails on the merits.

Generally, "[i]n the habeas context, 'questions regarding admissibility of evidence are matters of state law.'" *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir.

2007) (quoting *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir. 2006)). Mere violations of an evidentiary rule are not enough. Indeed, such questions are reviewed "only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993). A denial of due process is demonstrated by showing that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered [the petitioner's] entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (quotation omitted). Mr. McDaniels's claim does not meet this high standard.

Mr. McDaniels does not point to any specific Constitutional protection that would have made the introduction of D.K.'s statement erroneous. Nonetheless, the Court construes pro se pleadings liberally, *e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), and will endeavor to construe Mr. McDaniels's arguments broadly when possible. Applying this lens, the Court observes that his challenge to the admission of the statement at issue could be considered an invocation of the Confrontation Clause of the Sixth Amendment or the Due Process Clause. However, a careful examination reveals that neither provision was violated by the admission of the evidence during his trial.

### 1. Confrontation Clause

The Confrontation Clause protects the right of a criminal defendant to confront and cross-examine witnesses who testify against him. *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36, 50–52 (2004). However, a criminal defendant does not have the right to confront every witness who has made an out-of-court statement. Only "testimonial" statements of witnesses implicate the Confrontation Clause. *Id.* The Supreme Court has developed what is known as the "primary purpose" test to determine whether statements are testimonial. *Ohio v. Clark*, 135 S.Ct. 2173, 2179 (2015). Even statements made to law enforcement officers are considered nontestimonial when the circumstances objectively indicate that the primary purpose of the communication was to enable the officers to respond to an ongoing emergency. *Id.* (citing *Hammon v. Indiana*, 547 U.S. 813, 822 (2006)). Statements made to individuals other than law enforcement officers "are much less likely to be testimonial," though the Supreme Court has declined to adopt a bright line rule

5

excluding them from Confrontation Clause analysis altogether. *Id.* at 2181. In determining whether a statement was testimonial, courts must consider all relevant circumstances, including the "informality of the situation and the interrogation." *Id.* at 2180 (citing *Michigan v. Bryant*, 562 U.S. 344, 369, 374 (2011)).

In this case, taking the relevant circumstances into account, it is clear that D.K.'s statements were not testimonial. D.K. told his roommate that he had been using heroin with his drug dealer in response to D.M.'s question of whether he was okay. (Appeals Court Opinion, ECF No. 9 Ex. 6 at 3.) According to D.M., D.K. was acting agitated and strange before he asked the question. Rather than an interrogation, D.M. asked an informal question arising out of a genuine concern for D.K. His answer was clearly nontestimonial, and the introduction of the statement at trial did not violate the Confrontation Clause. *See Michigan v. Bryant*, 562 U.S. 344, 359 (2011) (noting that where the Confrontation Clause is not implicated, "the admissibility of [that] statement is the concern of state…rules of evidence.").

### 2. Due Process

The Court also concludes that the admission of the statement did not constitute a denial of due process. A state court evidentiary ruling should only be reversed if the petitioner can show "that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different." *Anderson*, 44 F.3d at 679 (quotation omitted). In making a determination on this issue, a Court must consider several factors, including "the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use the testimony elicited. *Id.* After careful review of the record, the Court finds that this standard is not met.

First, the Court does not find that admitting D.K.'s statement under the residual hearsay exception was error. At trial, D.K.'s statement was admitted pursuant to the residual hearsay exception found at Minn. R. Evid. 807. (*See* Appeals Court Opinion, ECF No. 9 Ex. 6 at 10.) The state trial and appellate courts have already reviewed the circumstances surrounding D.K.'s statement and found that the

6

statement had "circumstantial guarantees of trustworthiness" that rendered it admissible. (*See* Appeals Court Opinion, ECF No. 9 Ex. 6 at 12–13; *see also State v. Griffin*, 834 N.W.2d 688, 693 (Minn. 2013) (using a "totality of the circumstances" review to examine reliability).) In particular, the appellate court explicitly considered several factors, including D.K.'s lack of suspicious purpose in making the statement, the friendly relationship between D.K. and D.M., to whom he made the statement, the voluntariness of the statement, D.K.'s direct knowledge of the subject matter, and D.K.'s physical and mental condition when he made the statement, which corroborated what he described. (Appeals Court Opinion, ECF No. 9 Ex. 6 at 12–13.) None of these conclusions constitute an "unreasonable determination of the facts" as contemplated by 28 U.S.C. § 2254(d). And the balancing of these facts to find the statement to be reliable, and therefore admissible, was reasonable.

Finally, even if admitting the statement had violated state evidentiary rules, such an error was harmless and could not possibly rise to the level of a due process violation. The trial court's findings of fact were derived from significant evidence beyond D.K.'s statement: the testimony of law enforcement officers, the forensic pathologist, and D.M.; a forensic report finding heroin in D.K.'s system; a toxicology report that confirmed that a substance found in D.K.'s room was heroin; and photographic evidence that placed Mr. McDaniels at the scene less than two hours before D.K. died. (Appeals Court Opinion, ECF No. 9 Ex. 6 at 7–9.) Given the additional evidence in this case, it is clear that D.K.'s statement was merely cumulative, and any error made by admitting the statement is harmless. *Anderson*, 44 F.3d at 679. Certainly, a harmless error could not rise to the level of "pervasive misconduct" necessary to support a finding that a due process violation occurred.

### III.   Certificate of Appealability

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Mr. McDaniels has failed to make a substantial showing of the denial of any federal constitutional right. Further, the Court finds it unlikely that any other court would decide Mr. McDaniels's claims differently than discussed above. As a result, the Court recommends that Mr. McDaniels should not be granted a COA in this matter.

## RECOMMENDATION

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. Mr. McDaniels's petition for a writ of habeas corpus, ECF No. 1, be **DENIED**.
2. No COA be issued.
3. This case be **DISMISSED**.

Date: October 17, 2019

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.